**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

*Attorneys for Plaintiffs, the*
*putative FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SANTOS AMADOR, DARWIN ORTIZ, and MARIO AVILA, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**109-19 FOOD CORP., RUHANA FOOD INTERNATIONAL LLC, LIBERTY WHOLESALE FOOD CORP., 241-11 LINDEN FOOD CORP., 16611 FOOD CORP., RAMIZA FOOD CORP., 351 N. CENTRAL FOOD CORP., FOOD FARM CORP., FOOD FARM GROUP, INC., SHEAK RIPON a/k/a "RONNIE SHEIKH", and SYEDA SHAHTAJ, Jointly and Severally,**<br><br>**Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Santos Amador, Darwin Ortiz and Mario Avila (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs worked as butchers and general grocery employees at Defendants' grocery stores located in Queens and Nassau counties in New York. For their work, despite being non-exempt employees, Plaintiffs were paid flat weekly rates that did not provide overtime premiums for hours worked over forty (40) in a given workweek and sometimes fell below the applicable minimum wage. Plaintiffs and Defendants' other employees also did not receive spread of hours premiums, proper wage notices or wage statements.

2.      Plaintiffs bring this action to recover minimum wage and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring claims for failure to timely pay wages owed, for unpaid spread-of-hours premiums and for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York during the relevant NYLL limitations period.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district and Defendants' business is located in this district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiffs:**

8.      Plaintiff Santos Amador ("Amador") was, at all relevant times, an adult individual residing in Queens County, New York.

9.      Plaintiff Darwin Ortiz ("Ortiz") was, at all relevant times, an adult individual residing in Queens County, New York.

10.     Plaintiff Mario Avila ("Avila") was, at all relevant times, an adult individual residing in Queens County, New York.

11.     Throughout the relevant time period, Plaintiffs performed work for Defendants at the following four (4) locations of Defendants' Food Farm supermarkets:

- 109-19 Liberty Ave., Queens, New York 11419 (the "Liberty Ave. Location");
- 241-11 Linden Blvd., Elmont, New York 11003 (the "Linden Blvd. Location");
- 351 N. Central Ave., Valley Stream, New York 11580 (the "Valley Stream Location"); and
- 8961 Francis Lewis Blvd., Queens Village, New York 11427 (the "Francis Lewis Blvd. Location").

12.     Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

13.     101-19 Food Corp. is an active New York corporation with its principal place of business at 109-19 Liberty Ave., Queens, New York 11419.

14.     Ruhana Food International LLC is an active New York corporation with its principal place of business at 109-19 Liberty Ave., Queens, New York 11419.

15.      Liberty Wholesale Food Corp. is an active New York corporation with its principal place of business at 109-19 Liberty Ave., Queens, New York 11419.

4

16.     241-11 Linden Food Corp. is an active New York corporation with its principal place of business at 241-11 Linden Blvd., Elmont, New York 11003.

17.     16611 Food Corp. is an active New York corporation with its principal place of business at 351 N. Central Ave., Valley Stream, New York 11580.

18.     Ramiza Food Corp. is an active New York corporation with its principal place of business at 351 N. Central Ave., Valley Stream, New York 11580.

19.     351 N. Central Food Corp. is an active New York corporation with its principal place of business at 351 N. Central Ave., Valley Stream, New York 11580.

20.     Food Farm Corp. is an active New York corporation with its principal place of business at 8961 Francis Lewis Blvd., Queens Village, New York 11427.

21.     Food Farm Group, Inc. (collectively with 101-19 Food Corp., Ruhana Food International LLC, Liberty Wholesale Food Corp., 241-11 Linden Food Corp., 116611 Food Corp., Ramiza Food Corp., 351 N. Central Food Corp. and Food Farm Corp., the "Corporate Defendants") is an active New York corporation with its principal place of business at 8961 Francis Lewis Blvd., Queens Village, New York 11427.

22.     Sheak Ripon ("Ripon"), also known as Ronnie Sheikh, is an owner and operator of the Corporate Defendants.

23.     Syeda Shahtaj (collectively with Defendant Ripon, the "Individual Defendants" and, with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendants.

24.     Upon information and belief, the Corporate Defendants operated together as a single business enterprise and/or joint employers throughout the relevant time period, frequently

transferred employees among all four (4) locations, and employed extremely similar wage and hour practices at all locations.

25. Upon information and belief, the Individual Defendants maintained operational control over and managed the Corporate Defendants by supervising and determining the wages and compensation of employees, transferring employees among locations, establishing employees' work schedules, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs.

26. The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and the Defendants' other similarly situated employees, and are each an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

27. At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

28. At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

29. At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

30. Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

31.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second

Cause of Action as a collective action under the FLSA on behalf of themselves and the following

collective:

> All persons employed by Defendants at any time since August 17,
> 2018, and through the entry of judgment in this case (the "Collective
> Action Period") who worked as non-management employees at any
> of the following Food Farm supermarket locations:
> 109-19 Liberty Ave., Queens, New York 11419,
> 241-11 Linden Blvd., Elmont, New York 11003,
> 351 N. Central Ave., Valley Stream, New York 11580, and/or
> 8961 Francis Lewis Blvd., Queens Village, New York 11427
> (the "Collective Action Members").

32.     A collective action is appropriate in this circumstance because Plaintiffs and the

Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policies of failing to pay minimum wage for all hours worked and overtime premiums for

work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiffs

and the Collective Action Members did not receive the legally-required minimum wage or

overtime premium payments for all hours worked in excess of forty (40) hours per week.

33.     Plaintiffs and the Collective Action Members have substantially similar job duties

and are paid pursuant to a similar, if not the same, payment structure.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

34.     Pursuant to the NYLL, Plaintiffs bring their Third through Eighth Causes of Action

under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following

class:

> All persons employed by Defendants in New York at any time since
> January 1, 2015 and through the entry of judgment in this case (the

"Class Period") who worked as non-management employees at any
of the following Food Farm supermarket locations:
109-19 Liberty Ave., Queens, New York 11419,
241-11 Linden Blvd., Elmont, New York 11003,
351 N. Central Ave., Valley Stream, New York 11580, and/or
8961 Francis Lewis Blvd., Queens Village, New York 11427
(the "Class Members").

35.    The Class Members are readily ascertainable. The number and identity of the Class

Members are determinable from the records of Defendants. For purposes of notice and other

purposes related to this action, their names and addresses are readily available from Defendants.

Notice can be provided by means permissible under Fed. R. Civ. P. 23.

36.    The Class Members are so numerous that joinder of all members is impracticable.

37.    Upon information and belief, there are well in excess of forty (40) Class Members.

38.    The questions of law and fact common to the Class predominate over any questions

solely affecting the individual members of the Class. These common questions include, but are not

limited to:

    a.  whether Defendants employed Plaintiffs and the Class Members within the
        meaning of the NYLL;

    b.  whether Defendants failed to keep true and accurate time records for all hours
        worked by Plaintiffs and the Class Members;

    c.  whether Defendants failed and/or refused to pay Plaintiffs and the Class
        Members the statutory minimum wage for all hours worked;

    d.  whether Defendants failed and/or refused to pay Plaintiffs and the Class
        Members overtime premiums for hours worked in excess of forty (40) hours
        per workweek;

e.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members all wages due within seven (7) days following the end of a given workweek;

f.  whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

g.  whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

h.  whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

i.  whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

j.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

39.  <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, are non-management supermarket employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid the statutory minimum wage, overtime premium pay for hours worked over forty (40) hours in a given workweek or spread of hours premiums when they worked in excess of ten (10) hours in a given day; did not receive all wages due within seven (7) days after the end of a given

workweek; and did not receive proper wage statements and wage notices.

40.    If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

41.    <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

42.    Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

43.    <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

44.    Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

45.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Supermarket Enterprise**

46.    Throughout the relevant time period, Defendants operated four (4) supermarket locations jointly and/or as a single entity: the Liberty Avenue Location, the Linden Blvd. Location, the Valley Stream Location and the Francis Lewis Location.

47.     Upon information and belief, the Francis Lewis Location is permanently closed. However, according to the New York State Department of State, Division of Corporations, the corporate entities that operated this location, Defendant Food Farm Corp. and Food Farm Group, Inc. remain active.

48.     Defendant 109-19 Food Corp. was registered with the New York State Department of State, Division of Corporations on October 20, 2010.

49.     Defendant Ruhana Food International LLC was registered with the New York State Department of State, Division of Corporations on March 1, 2016.

50.     Defendant Liberty Wholesale Food Corp. was registered with the New York State Department of State, Division of Corporations on September 21, 2018.

51.     Defendant 241-11 Linden Food Corp. was registered with the New York State Department of State, Division of Corporations on September 22, 2017.

52.     Defendant 16611 Food Corp. was registered with the New York State Department of State, Division of Corporations on January 11, 2017.

53.     Defendant Ramiza Food Corp. was registered with the New York State Department of State, Division of Corporations on June 8, 2015.

54.     Defendant 351 N. Central Food Corp. was registered with the New York State Department of State, Division of Corporations on October 23, 2013.

55.     Defendant Food Farm Corp. was registered with the New York State Department of State, Division of Corporations on September 10, 2019.

56.     Defendant Food Farm Group, Inc. was registered with the New York State Department of State, Division of Corporations on September 22, 2017.

57.     Upon information and belief, the Corporate Defendants (collectively the "Food Farm Supermarkets") are all owned and operated as single business enterprise by the Individual Defendants according to the same policies and practices including common timekeeping, recordkeeping, employment and wage payment practices.

58.     Upon information and belief, the Individual Defendants have owned, operated and managed certain locations of the Food Farm Supermarket since 2007 or earlier.

59.     Throughout the relevant time period, employees including Plaintiffs were frequently transferred among the Food Farm Supermarkets.

60.     Upon information and belief, the Food Farm Supermarkets are part of the Associated Supermarket Group, a network of independently owned and operated supermarkets.

61.     Upon information and belief, the Valley Stream Location and Liberty Avenue Location were previously known as Desi Food Market.

62.     Upon information and belief, in or around 2015, the Valley Stream Location and Liberty Avenue Locations changed their names to Food Farm Supermarkets.

63.     Upon information and belief, throughout the relevant time period, Defendant Ripon has been present at the supermarket locations on a monthly basis, where he meets with managers to discuss business operations and personnel matters, oversees operations of the business, and setting and enforcing business policies and practices including the pay practices complained of herein. When employees requested a raise, they typically spoke directly with Defendant Ripon. Upon information and belief, Defendant Ripon possessed the authority to hire and fire employees and approved hiring and termination of employees.

64.     Upon information and belief, throughout the relevant time period, Defendant

12

Shahtaj has been present at the supermarket locations several times per week, where she meets with managers, oversees business operations, and sets and enforces business policies and practices including the pay practices complained of herein. Upon information and belief, Defendant Shahtaj is responsible for hiring and firing employees with Defendant Ripon's approval.

65.    Upon information and belief, at all times relevant, the Individual Defendants have held the power and authority to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

66.    Upon information and belief, the Liberty Avenue, Linden Blvd. and Valley Stream Food Farm Supermarkets employed between eight and twelve (8-12) employees at any given time, not counting the Individual Defendants, and the Francis Lewis Location employed between five and six (5-6) employees, not counting the Individual Defendants. Upon information and belief, all of the Food Farm Supermarkets experienced moderate employee turnover.

**Plaintiffs' Work for Defendants**

67.    **Plaintiff Amador** was employed by Defendants from in or around 2012 through in or around October 2020, except for a period of approximately three (3) or four (4) months starting June 10, 2020 when he was recovering from a workplace accident (the "Amador Employment Period").

68.    Throughout the Amador Employment Period, Plaintiff Amador primarily worked as a butcher, performing duties including cutting, grinding, de-boning, tying and packaging meat; weighing, labeling and pricing packages of meat; preparing displays in the meat department; responding to customers at the meat counter; and cleaning and sanitizing his work area.

69.    Throughout the Amador Employment Period, Plaintiff Amador worked primarily

at the Liberty Avenue Location but in or around 2019 was transferred to work at the Linden Blvd. Location for several months.

70.    From the beginning of the Amador Employment Period to in or around 2016, Plaintiff typically worked six (6) days per week, for eleven (11) to twelve (12) hours per day from approximately 8:00 am to between approximately 7:00 pm and 8:00 pm, for a total of sixty-six (66) to seventy-two (72) hours per week, minus breaks.

71.    From in or around 2016 through the end of the Amador Employment Period, Plaintiff Amador typically worked six (6) days per week, and from in or around 2019 occasionally five (5) days per week, for nine (9) to ten (10) hours per day, often from 8:00 am to 6:00 pm. In total, during this period, Plaintiff Amador typically worked fifty-four (54) to sixty (60) hours per week, minus breaks, during most weeks and forty-five (45) to fifty (50) hours per week, minus breaks, when he worked five (5) days.

72.    Before in or around 2019, Defendants did not provide Plaintiff Amador with any means of tracking his hours worked. In or around 2019, Defendants installed a point of sales ("POS") system on the cash registers, where Plaintiff was required to punch in and punch out to track his time, including his breaks.

73.    Before in or around 2019, Plaintiff was typically allowed to take a thirty (30) minute break per day. Beginning with the installation of the POS system in or around 2019, Plaintiff was typically allowed to take a one (1) hour break per day.

74.    Throughout the Amador Employment Period, Plaintiff Amador was paid a flat weekly rate, which he received in cash without any accompanying wage statement or paystub. At no time during the Amador Employment Period did Plaintiff Amador receive wage statements or

14

paystubs showing his hourly rate, any overtime rate, total hours worked or gross or net wages paid.

75.     From in or around 2012 to in or around 2015, Plaintiff Amador was paid a flat rate seven hundred dollars ($700.00) per week. From in or around 2015 to in or around 2017, Plaintiff Amador was paid a flat rate of seven hundred and fifty dollars ($750.00) per week. From in or around 2017 to in or around 2019, Plaintiff Amador was paid a flat rate of eight hundred dollars ($800.00) per week. In or around 2019, Plaintiff Amador's flat rate increased to nine hundred dollars ($900.00) during the period that he continued to work at the Liberty Avenue Location.

76.     In or around 2019, Plaintiff Amador was transferred to work at the Linden Blvd. Location for several months. From this time in 2019 and through the remainder of the Amador Employment Period, Plaintiff Amador was paid a flat rate of one thousand dollars ($1,000.00) per week.

77.     From 2019 through the end of the Amador Employment, on occasion Plaintiff Amador worked five (5) days per week. When this occurred, his weekly pay was reduced to eight hundred dollars ($800.00) per week.

78.     As a result of Defendants' practice of paying a flat weekly rate, Plaintiff Amador did not receive overtime premiums even though he typically worked in excess of forty (40) hours per week or spread of hours premiums even though his workdays frequently exceeded ten (10) hours per day, particularly from the beginning of the relevant time period through in or around 2016.

79.     At times during the Amador Employment Period, particularly during the portion of 2019 when Plaintiff Amador worked only at the Liberty Avenue Location, Plaintiff Amador's effective hourly rate fell below the statutory minimum wage.

80.     At no time during the Amador Employment Period did Plaintiff Amador receive a wage notice setting forth his regular and overtime rates, regular payday, any deductions or credits claimed by Defendants, employer contact information, or other information required by NYLL § 195(1)(a).

81.     **Plaintiff Darwin Ortiz** was employed by Defendants from in or around October 2018 to in or around March 2021 (the "Ortiz Employment Period").

82.     During the Ortiz Employment Period, Plaintiff Ortiz worked at each of the four (4) Food Farm Supermarkets locations. For the first year of his employment, Plaintiff Ortiz worked primarily at the Liberty Avenue Location. Subsequently, in or around the end of 2019, he was transferred to the Linden Blvd. Location, where he worked for five (5) or six (6) months. After that time, he was transferred back to the Liberty Avenue Location. While he primarily worked at the Liberty Avenue Location and the Linden Blvd. Location, Plaintiff Ortiz was also sent to work as needed at the Francis Lewis Location and the Valley Stream Location to cover for absent employees.

83.     Plaintiff Ortiz worked primarily as a butcher, performing tasks including cutting, deboning, trimming, tying, grinding and packaging meat; weighing, labeling and pricing packages of meat; preparing displays for the meat department; serving customers at the meat department; and cleaning and sanitizing his work area.

84.     From the beginning of the Ortiz Employment Period through in or around February 2020, Plaintiff Ortiz typically worked six (6) days per week with Tuesdays off. During this period, Plaintiff Ortiz typically worked ten (10) hours per day—from 10:00 am to 8:00 pm for the first year of his employment and subsequently from 8:00 am to 6:00 pm—for a total of approximately

sixty (60) hours per week.

85.    From in or around February 2020 through the end of the Ortiz Employment Period, Plaintiff Ortiz typically worked two (2) days per week, Saturdays and Sundays, ten (10) hours per day, from 8:00 am to 6:00 pm, for a total of approximately twenty (20) hours per week.

86.    When Plaintiff Ortiz worked at the Liberty Avenue Location, he was rarely able to take a break and, when he was able to take breaks to quickly eat, they were typically interrupted, as he would be required to perform work such as unloading trucks delivering meat or other products and organizing inventory following a delivery. When Plaintiff Ortiz worked at the Linden Blvd. Location, Plaintiff Ortiz was typically able to take thirty (30) minute meal breaks that were rarely interrupted.

87.    In or around 2019, Defendants installed a POS system at the Liberty Avenue Location, at which time Plaintiff Ortiz began tracking his time by punching in and out at the cash register. Prior to this time, Defendants provided no means for Plaintiff Ortiz to track his hours worked. A few months after installing the POS system, Defendants stopped requiring employees to track their hours via the POS system.

88.    Throughout the Ortiz Employment Period, Plaintiff Ortiz was paid a flat rate, which he received on a weekly basis in cash, without an accompanying wage statement or paystub setting forth his hourly or overtime rates, total hours worked, or gross or net wages.

89.    At the beginning of the Ortiz Employment Period, Plaintiff Ortiz was paid a flat rate of two hundred and ninety dollars ($290.00) per week. Beginning in or around 2019, Plaintiff Ortiz was paid a flat rate of three hundred dollars ($300.00) per week.

90.    When Plaintiff Ortiz was transferred to the Linden Blvd. Location, he complained

to Defendant Ripon about his low pay. At that time, Plaintiff Ortiz's flat weekly rate was increased to six hundred dollars ($600.00).

91.     For the months between the time that Plaintiff Ortiz was transferred back to the Liberty Avenue Location and in or around February 2020, Plaintiff Ortiz was paid a flat rate of nine hundred dollars ($900.00) per week.

92.     From February 2020 through the end of the Ortiz Employment Period, Plaintiff Ortiz was paid three hundred dollars ($300.00) per week.

93.     As a result of Defendants' practice of paying a flat weekly rate, Plaintiff Ortiz did not receive overtime premiums even though he typically worked in excess of forty (40) hours per week.

94.     For much of the Ortiz Employment Period, particularly prior to late 2019, Plaintiff Ortiz's effective hourly fell below the statutory minimum wage.

95.     At no time during the Ortiz Employment Period did Plaintiff Ortiz receive a wage notice setting forth his regular and overtime rates, regular payday, any deductions or credits claimed by Defendants, employer contact information, or other information required by NYLL § 195(1)(a).

96.     **Plaintiff Mario Avila** worked for Defendants at the Liberty Ave. Location of Food Farm Supermarkets from in or around September 2015 through in or around late August 2018 (the "Avila Employment Period").

97.     Throughout the Avila Employment Period, Plaintiff Avila worked primarily as a butcher. His duties included cutting, deboning, trimming, tying, grinding and packaging meat; weighing, labeling and pricing packages of meat; preparing displays at the meat department;

serving customers; cleaning and sanitizing his work area; and performing deep cleans of the meat refrigerator once per week.

98.    Throughout the Avila Employment Period, Plaintiff Avila typically worked six (6) days per week, with Tuesdays or Wednesdays off. Plaintiff Avila's regular hours were from 10:00 am to 8:00 pm, but he was often called in to start one (1) or two (2) hours early. Plaintiff Avila often worked sixty (60) hours per week and sometimes as many as sixty-five (65) to sixty-eight (68) hours per week.

99.    Throughout the Avila Employment Period, Plaintiff Avila was permitted to take a fifteen (15) minute break in the morning and a thirty (30) minute break for lunch, but these breaks were typically interrupted by tasks including serving customers, especially during the holidays and the summer, which were often busy in the meat department.

100.    At the beginning of the Avila Employment Period, Plaintiff Avila was instructed to write down his name and the time he started and finished his workday. At one point, Plaintiff Avila was instructed that he did not need to write down his name and hours and that the cashiers would make those notes. Defendants did not provide any other means for Plaintiff Avila to track his hours worked.

101.    Throughout the Avila Employment Period, Plaintiff Avila was paid a flat weekly rate, which he was paid on a weekly basis in cash without any accompanying wage statement or paystub setting forth his regular hourly or overtime rates, total hours worked, or gross or net wages.

102.    Throughout the Avila Employment Period, Plaintiff Avila was paid a flat weekly rate of five hundred dollars ($500.00).

103.    As a result of Defendants' practice of paying a flat weekly rate, Plaintiff Avila did

not receive overtime premiums even though he typically worked in excess of forty (40) hours per week and did not receive spread of hours premiums even though he frequently worked in excess of ten (10) hours per day.

104.    Throughout the Avila Employment Period, Plaintiff Avila's effective hourly fell below the statutory minimum wage.

105.    At no time during the Avila Employment Period did Plaintiff Avila receive a wage notice setting forth his regular and overtime rates, regular payday, any deductions or credits claimed by Defendants, employer contact information, or other information required by NYLL § 195(1)(a).

**Defendants' Unlawful Corporate Policies**

106.    Plaintiffs and the Class Members were all paid pursuant to the same corporate policies of Defendants, including paying a flat weekly rate, failing to pay the statutory minimum wage for all hours worked, overtime premiums, and spread of hours premiums.

107.    At all relevant times, Defendants implemented their unlawful pay policies with complete disregard for or intentional violation of the appliable federal, state and local wage and hour laws.

108.    Plaintiffs have spoken with other employees of Defendants who were similarly not paid minimum wage for all hours worked for all or a portion of their employment, overtime premiums for hours worked over forty (40) each week, or spread of hours premiums for days when they worked in excess of ten (10) hours per day. Defendants' failure to pay Plaintiffs minimum wage, overtime premiums or spread of hours premiums is a corporate policy of Defendants which applies to all of their non-management employees throughout the Class Period.

109. Defendants' pay practices resulted in Plaintiffs and the Class Members not receiving all wages owed to them within seven (7) days after the end of a given workweek.

110. Defendants have not provided Plaintiffs or Class Members with accurate statements of wages containing the dates of work covered by their wage payments; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

111. Defendants have not provided Plaintiffs or Class Members with proper wage notices at the time of hire, annually by February 1 of each year, or when their wage rate changed.

112. Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment.

113. Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**<u>FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE</u>**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

114. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

115.    By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

116.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

117.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

118.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

119.    By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

120.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

121.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
**(Brought on Behalf of Plaintiffs and the Class Members)**

122.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

123.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

124.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

125.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

126.    Defendants willfully violated Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

127.    Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

128.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

129.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day,

24

in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

130.     Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

**SIXTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW - FAILURE TO PAY WAGES</u>**
**(Brought on Behalf of Plaintiff and the Class Members)**

131.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

132.     Pursuant to NYLL § 191 and the cases interpreting same, workers such as Plaintiffs and the Class Members are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which wages are earned." Thus, Defendants violated NYLL § 191 by failing to pay Plaintiffs and the Class Members all of their wages earned within the week such wages were due.

133.     Pursuant to NYLL § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiffs and the Class Members, that is not otherwise authorized by law or by the employee.

134.     By withholding wages and overtime compensation from Plaintiffs and the Class Members, pursuant to NYLL § 193 and the cases interpreting same, Defendants made unlawful

deductions in wages owed to Plaintiffs and the Class Members.

135.    Defendants' failure to pay Plaintiffs and the Class Members wages of any kind for several hours of work in certain weeks violated NYLL §§ 191 and 193.

136.    Defendants' failure to comply with NYLL §§ 191 and 193 caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants his unpaid wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SEVENTH CAUSE OF ACTION**
<u>**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**</u>
**(Brought on Behalf of Plaintiffs and the Class Members)**

137.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

138.    Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the

telephone number of the employer; plus such other information as the commissioner deems material and necessary.

139.     Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendant fifty dollars ($50) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**EIGHTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

140.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

141.      Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

142.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250) per employee for each

day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c. An order tolling the statute of limitations;

d. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as

provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.     An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.     An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.     An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

i.     Fifty dollars ($50) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.     Two hundred and fifty dollars ($250) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.     An award of prejudgment and post-judgment interest;

l.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
       August 17, 2021

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
    Brent E. Pelton (BP 1055)
    Pelton @PeltonGraham.com
    Taylor B. Graham (TG 9607)
    Graham@PeltonGraham.com
    111 Broadway, Suite 1503
    New York, New York 10006
    Telephone: (212) 385-9700
    Facsimile: (212) 385-0800

    *Attorneys for Plaintiffs, the putative FLSA*
    *Collective and Class*

**Notice of Shareholder Liability for Services Rendered
Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of 109-19 FOOD CORP., RUHANA FOOD INTERNATIONAL LLC, LIBERTY WHOLESALE FOOD CORP., 241-11 LINDEN FOOD CORP., 16611 FOOD CORP., RAMIZA FOOD CORP., and 351 N. CENTRAL FOOD CORP., FOOD FARM CORP., and FOOD FARM GROUP, INC., are hereby notified that the plaintiffs in this matter, individually and on behalf of the putative FLSA collective they seek to represent, intend to enforce your personal liability, as the ten (10) largest shareholders of 109-19 FOOD CORP., RUHANA FOOD INTERNATIONAL LLC, LIBERTY WHOLESALE FOOD CORP., 241-11 LINDEN FOOD CORP., 16611 FOOD CORP., RAMIZA FOOD CORP., 351 N. CENTRAL FOOD CORP., FOOD FARM CORP., and FOOD FARM GROUP, INC and to charge you with indebtedness of said corporation to the plaintiffs for services performed for the corporation as employees during the six (6)-year period preceding the filing of the complaint.

Dated: August 17, 2021

_____
Brent E. Pelton, Esq.

*Attorneys for Plaintiffs, the putative*
*FLSA Collective and class*

31

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of 109-19 Food Corp., Liberty Wholesale Food Corp., Ruhana Foods International LLC, 241-11 Linden Food Corp., and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.



_____          _____
Signature                            Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de 109-19 Food Corp., Liberty Wholesale Food Corp., Ruhana Foods International LLC, 241-11 Linden Food Corp. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.



_____          _____
Firma                                Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

—« ADVOCATES FOR JUSTICE »—

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of 109-19 Food Corp., Liberty Wholesale Food Corp., Ruhana Foods International LLC, 241-11 Linden Food Corp., and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____                    _____
Signature                                          Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de 109-19 Food Corp., Liberty Wholesale Food Corp., Ruhana Foods International LLC, 241-11 Linden Food Corp. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____                    _____
Firma                                              Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of 109-19 Food Corp., Liberty Wholesale Food Corp., Ruhana Foods International LLC, 241-11 Linden Food Corp., and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____          _____
Signature                                                       Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de 109-19 Food Corp., Liberty Wholesale Food Corp., Ruhana Foods International LLC, 241-11 Linden Food Corp. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____          Mario Avila
Firma                                                             Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.